UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-30628
_____

JAMES P. ASHER, ET AL,

Plaintiffs,

LOUISIANA WORKERS' COMPENSATION CORPORATION,

Intervenor Plaintiff - Appellant,

versus

HYDROSONIC EQUIPMENT & MANUFACTURING CO., INC., ET AL,

Defendants,

NCH CORPORATION,

Defendant - Appellee,

EXCELL MANUFACTURING COMPANY INCORPORATED,

Third Party Defendant - Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(94-CV-2157-T)
_____

March 12, 1997

Before JONES, STEWART, and DENNIS, Circuit Judges,

PER CURIAM:[*]

The district court granted summary judgment to NCH Corporation and Excell Manufacturing Company, finding that Plaintiff James Asher ("Asher") and the intervening Plaintiff, the Louisiana Workers' Compensation Corporation ("LWCC"), failed to raise a genuine issue of material fact concerning appellees' liability for the injuries suffered by Asher pursuant to the Louisiana Products Liability Act("LPLA"), La. R.S. 9:2800.51 *et seq.* In particular, the district court found that Asher's use of the Twin Clean II steam cleaner, that is, his decision to turn the machine on and off with vise-grip pliers connected to a bare metal switch shaft while he stood in water, was not a reasonably anticipated use of the product. Further, the court found that the product had been modified after it left the manufacturer's control. Asher did not appeal, but LWCC has done so.

Having carefully considered the briefs, pertinent parts of the record, and the arguments of counsel, we affirm the district court's finding on the issue of modification. La. R.S. 9:2800.54(C) states the "[c]haracteristic of the product that renders it unreasonably dangerous must exist at the time the product left the control of its manufacturer or result from a

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

2

reasonably anticipated alteration or modification of the product." La. R.S. 9:2800.53(8) defines "reasonably anticipated alteration or modification" as "a change in a product that the product's manufacturer should reasonably expect to be made by an ordinary person in the same or similar circumstances, and also . . . a change arising from ordinary wear and tear." This definition does not include "[c]hanges to or in a product or its operation because the product does not receive reasonable care and maintenance." La. R.S. 9:2800.53(8)(c).

The record demonstrated that the steam cleaner's switch was free of defects when it left the manufacturer's control and that it was modified. The original 2-foot electric power cord was replaced with a 30-foot cord, and in so doing, the employer disassembled the on-off switch, removed the wires connected to the switch and replaced them with wires from the longer cord, and disassembled the plastic insulating boot from the on-off switch. Further, at some point during the machine's existence with Turner, the plastic knob of the switch had to have been removed or worn off, the plastic bushing had been pulled off, and the plastic insulation sleeve had been ripped off (a modification which cannot be done by hand) or its two set screws had been mechanically removed. Only by removing all three devices -- the knob, bushing and sleeve -- could the switch conduct electricity. Asher's expert witness, Goodman, testified that if any one of these devices had

3

remained in place, the metal shaft of the on-off selector switch could not have shocked Asher.

Consequently, the evidence shows that the switch and cord had been altered, and LWCC has failed to raise any material issue of fact regarding whether, notwithstanding the modification of the steam cleaner, appellees can be liable under the LPLA. LWCC has failed to produce evidence that anything other than the metal shaft caused Asher's shock. Asher testified that nothing happened when he touched the body of the steam cleaner, but he was shocked as he gripped uninsulated pliers attached to the metal shaft of the on-off selector switch. An electrician who examined the steam cleaner the day after the accident tested the selector switch and found it conducted electricity. Although LWCC cites expert testimony that touching the body of the machine could potentially have been an additional source of the shock, it has produced nothing to refute the evidence that the switch, which had been altered, was the actual cause of the shock.

Furthermore, even assuming *arguendo* that the alteration of the steam cleaner might have been foreseeable, it was not "reasonably expected." Stripping all of the insulation shields off the switch shaft and applying pliers to the metal shaft instead of ordering a new knob transcends mere wear and tear and does not amount to "reasonable care and maintenance." LWCC has failed to

4

raise any issues of material fact regarding whether the machine's switch was originally defective and whether the injury resulted in a "reasonably anticipated alteration or modification" of the Twin Clean II steam cleaner.

We do not reach the question whether Asher's method of turning on the steam cleaner was itself a "reasonably anticipated use" of the machine.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

5